UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SARA A. MALMSTEN,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,

Defendant.

NO: 13-CV-0028-TOR

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT are the parties' cross-motions for summary judgment (ECF Nos. 12 and 13). Plaintiff is represented by Lora Lee Stover. Defendant is represented by Franco L. Becia. This matter was submitted for consideration without oral argument. The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the Court grants Defendant's motion and denies Plaintiff's motion.

JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g); 1383(c)(3).

STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"),

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

ALJ'S FINDINGS

Plaintiff filed applications for disability insurance benefits and supplemental security income disability benefits on September 10, 2010, alleging a disability onset date of November 15, 1982.[1] Tr. 221-37. These applications were denied initially and upon reconsideration, and Plaintiff requested a hearing. Tr. 170-76, 184-87, 192-93. A hearing was held before an Administrative Law Judge on August 16, 2011. Tr. 41-88. The ALJ rendered a decision denying Plaintiff benefits on October 14, 2011. Tr. 23-34.

The ALJ found that Plaintiff met the insured status requirements of Title II of the Social Security Act through March 31, 2010. Tr. 25. At step one, the ALJ

---

[1] Plaintiff also filed an application for child disability benefits on the same date. The Commissioner's disposition of that application is not at issue here. Plaintiff's alleged onset date was subsequently amended to November 15, 2000.

found that Plaintiff had not engaged in substantial gainful activity since November 15, 2000, the amended alleged onset date. Tr. 26. At step two, the ALJ found that Plaintiff had severe impairments consisting of (1) disorders of the spine involving thoracolumbar scoliosis (status post thoracic fusion) and multi-level lumbar spondylosis; (2) history of cerebral palsy; (3) reactive airway disease (asthma); (4) visual disturbance involving left exotropia with visual field constriction; and (5) learning/math disorder. Tr. 26. At step three, the ALJ found that Plaintiff's severe impairments did not meet or medically equal a listed impairment. Tr. 26. The ALJ then determined that Plaintiff had the residual functional capacity to:

> Perform a wide range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). She would be able to perform work that does not involve lifting and/or carrying more than a maximum of 10 pounds at a time; lifting and/or carrying articles such as dockets files, ledgers, or small tools more than occasionally; any pushing or pulling in excess of lifting restrictions; standing and/or walking for more than a total of two hours in an eight-hour workday; any climbing of ladders, ropes, or scaffolds; climbing of ramps or stairs more than occasionally; balancing, stooping, crouching, kneeling, or crawling more than occasionally; any concentrated exposure to unprotected heights or use of moving machinery; or more than simple, routine, and repetitive tasks.

Tr. 28-32. At step four, the ALJ found that Plaintiff had no past relevant work. Tr. 32. At step five, the ALJ found that Plaintiff could perform the representative occupations of hand packager, telephone solicitor and cashier, and that such occupations existed in significant numbers in the national economy. Tr. 33. In

light of this step five finding, the ALJ concluded that Plaintiff was not disabled under the Social Security Act and denied her claims on that basis. Tr. 33-34.

The Appeals Council denied Plaintiff's request for review on November 30, 2012, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. Tr. 1-6; 20 C.F.R. §§ 404.981, 416.1484, and 422.210.

ISSUES

Plaintiff raises three issues for review:

1. Whether the ALJ erred in rejecting Plaintiff's subjective complaints of disabling pain;
2. Whether the ALJ properly considered the opinions of two examining physicians; and
3. Whether the ALJ erred at step five.

ECF No. 12 at 8-15.

DISCUSSION

**A. Adverse Credibility Determination**

In social security proceedings, a claimant must prove the existence of physical or mental impairment with "medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. §§ 416.908; 416.927. A claimant's statements about his or her symptoms alone will not suffice. 20 C.F.R. §§ 416.908; 416.927. Once an impairment has been proven to exist, the claimant need not offer further medical evidence to substantiate the alleged severity of his or

her symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). As long as the impairment "could reasonably be expected to produce [the] symptoms," the claimant may offer a subjective evaluation as to the severity of the impairment. *Id.* This rule recognizes that the severity of a claimant's symptoms "cannot be objectively verified or measured." *Id.* at 347 (quotation and citation omitted).

If an ALJ finds the claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit [a reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F .3 d 947, 958 (9th Cir. 2002). In making this determination, the ALJ may consider, *inter alia*: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Id.* If there is no evidence of malingering, the ALJ's reasons for discrediting the claimant's testimony must be "specific, clear and convincing." *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quotation and citation omitted). The ALJ "must specifically identify the testimony she or he finds not to be credible and must

explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

Plaintiff contends that the ALJ failed to provide clear and convincing reasons supported by substantial evidence for discrediting her statements about the severity of her back impairment. ECF No. 12 at 12-13. The Court disagrees. The ALJ provided at least three clear and convincing reasons for rejecting Plaintiff's statements. First, the ALJ noted that Plaintiff's treatment history did not support her claims of total disability. Specifically, the ALJ observed that, despite undergoing corrective back surgery in 1991, Plaintiff's medical records reflected only "episodic complaints of back pain due to activity related injuries" sustained while playing basketball and running cross-country in high school. Tr. 29. The ALJ also found it significant that (1) Plaintiff's spondylolisthesis remained unchanged over the course of four routine follow-up evaluations from 2000 to 2002; and (2) Plaintiff did not seek any treatment for back pain during the next three years. Tr. 30. These observations, when taken in conjunction with the additional clear and convincing reasons discussed below, are sufficient to support the ALJ's adverse credibility determination. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (although an ALJ "may not reject a claimant's subjective complaints based solely upon a lack of objective medical evidence to fully corroborate the alleged severity of pain," he or she may consider an absence of

objective medical evidence in conjunction with other factors when making an adverse credibility determination).

Second, and in a related vein, the ALJ noted that Plaintiff had not been treated for back pain in the four years preceding her application for disability benefits (from February 2006 to September 2010). Tr. 30. This was also a permissible basis for discounting Plaintiff's credibility. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ may consider claimant's failure to pursue "an aggressive treatment program [or] an alternative or more tailored treatment program" in response to allegedly disabling pain as a reason for discounting the claimant's credibility). The record does not support Plaintiff's apparent assertion that she was unable to pursue treatment due to a lack of health insurance. *See* ECF No. 12 at 12. At the hearing, Plaintiff expressly conceded that she had health insurance during this period. Tr. 53-54.

Third, the ALJ noted that Plaintiff's activities of daily living were inconsistent with her claims of disabling back pain. Specifically, the ALJ wrote that Plaintiff "reported no problems with personal care or hygiene; preparing her own meals daily; daily and weekly chores around the home; and managing her own money." Tr. 27. The ALJ further noted that Plaintiff was able to run cross country and play basketball while in high school and had more recently been employed as an assistant cross country coach at her former high school. Tr. 29-30. The ALJ

did not err in relying upon Plaintiff's reported activities of daily living as a reason for discounting her credibility.

Plaintiff has also challenged the ALJ's rejection of lay witness statements concerning the severity of her impairments. ECF No. 12 at 12-13. As Plaintiff acknowledges, the ALJ rejected these statements on the ground that they were based in large part upon Plaintiff's subjective complaints. Tr. 32. Because the ALJ properly rejected Plaintiff's subjective complaints, there was no error in his rejection of the lay witness statements. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").

**B. Opinions of Dr. Quackenbush and Dr. Wylie**

Plaintiff asserts that the ALJ failed to fully incorporate the opinions of Dr. Quackenbush and Dr. Wylie into the residual functional capacity assessment. This assertion is belied by the ALJ's opinion. The ALJ afforded "great weight" to the opinions of both doctors. Dr. Quackenbush performed a psychological evaluation of Plaintiff in November 2010. In his examination report, Dr. Quackenbush noted:

> The prognosis for Claimant appears good, although she will likely require some accommodations in the workforce due to physical

> limitations (e.g., fatigue and pain impeding pace and persistence) and mild learning disabilities (i.e., slow reading speed and limited writing facility). Cognitively, Claimant exhibits generally average abilities. She can understand and follow simple to detailed instructions, and her reasoning and abstraction skills appeared near average as well. Socially, Claimant was pleasant and friendly, albeit some hesitance to engage with others was noted (possibly due to difficult developmental experiences as a child and adolescent).

Tr. 413. As Defendant correctly notes, the ALJ properly accounted for this opinion by limiting Plaintiff to "simple, routine, and repetitive tasks." Tr. 28.

Dr. Wylie administered a visual performance evaluation of Plaintiff in March 2010. Dr. Wylie diagnosed Plaintiff with left exotropia (an outward turning of the eye), significant visual field constriction, and visual disturbances. Tr. 409. With regard to work-related limitations, Dr. Wylie concluded:

> [Plaintiff] has no visual acuity related limitations. With her reduction in peripheral awareness it would not be wise having doing [sic] a job with lots of driving or around heavy equipment. With the reduced peripheral awareness it would also be decrease [sic] a person's efficiency and increase fatigue. If she was allowed a 5 to 10 minute break every two hours of work that would give great assistance to her.

Tr. 409. The ALJ properly accounted for this opinion by limiting Plaintiff to work that (1) does not involve climbing of ladders, ropes or scaffolds; (2) involves only occasional climbing of ramps or stairs; (3) requires only occasional balancing, stooping, crouching, kneeling or crawling; and (4) does not involve concentrated exposure to unprotected heights or the use of moving machinery. Tr. 28.

Plaintiff appears to suggest that the ALJ should have included a requirement that Plaintiff be allowed a 5 to 10 minute break every two hours as suggested by Dr. Wylie. ECF No. 12 at 11. As Defendant correctly notes, however, there was no need for the ALJ to include such a requirement in the RFC because employees are typically granted breaks of this duration and frequency as a matter of course in most workplaces. The vocational expert specifically addressed this issue at the hearing:

> Q: If you were to consider a hypothetical worker, in general, that would require a break after two hours of work up to at least ten minutes, does that speak to the issue of sustainability of employment?
>
> A: Well, in general, most employers offer at least a ten minute break every hour. In fact in some states, it's regulation that that happen. So a ten-minute break every two hours is not at all out of the norm.

Tr. 84. The ALJ did not err in declining to include a greater rest break restriction in Plaintiff's RFC.

**C. Step Five Challenge**

Plaintiff argues that the ALJ erred in finding that she was capable of performing other work at step five of the sequential evaluation process. ECF No. 12 at 13. While Plaintiff has styled her argument as a challenge to the adequacy of the hypothetical question posed to the vocational expert, her analysis focuses on the ALJ's omission of the same limitations discussed above from Plaintiff's RFC.

This argument fails for the same reasons discussed above. Defendant is entitled to summary judgment.

**IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment (ECF No. 13) is **GRANTED**.
2. Plaintiff's Motion for Summary Judgment (ECF No. 12) is **DENIED**.

The District Court Executive is hereby directed to file this Order, enter Judgment for Defendant, provide copies to counsel, and **CLOSE** the file.

**DATED** November 27, 2013.

THOMAS O. RICE
United States District Judge